UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| DIANE M. PARISEAU | : | |
| | : | |
| v. | : | C.A. No. 07-268ML |
| | : | |
| MICHAEL J. ASTRUE | : | |
| Commissioner of the Social Security | : | |
| Administration | : | |

**REPORT AND RECOMMENDATION**

Lincoln D. Almond, United States Magistrate Judge

This matter is before the Court for judicial review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying Social Security Disability Insurance Benefits ("DIB") under the Social Security Act (the "Act"), 42 U.S.C. § 405(g). Plaintiff filed her Complaint on July 13, 2007 seeking to reverse the decision of the Commissioner. On January 24, 2008, Plaintiff filed a Motion to Reverse the Decision of the Commissioner. (Document No. 8). On February 25, 2008, the Commissioner filed a Motion for an Order Affirming the Decision of the Commissioner. (Document No. 9).

This matter has been referred to me for preliminary review, findings and recommended disposition. 28 U.S.C. § 636(b)(1)(B); LR Cv 72. Based upon my review of the record, the legal memoranda filed by the parties and independent legal research, I find that there is substantial evidence in this record to support the Commissioner's decision and findings that Plaintiff is not disabled within the meaning of the Act. Consequently, I recommend that the Commissioner's Motion for an Order Affirming the Decision of the Commissioner (Document No. 9) be GRANTED

and that Plaintiff's Motion to Reverse the Decision of the Commissioner (Document No. 8) be DENIED.

## I. PROCEDURAL HISTORY

Plaintiff filed an application for DIB on November 10, 2003, alleging disability since February 15, 2002. (Tr. 94-96). Plaintiff's insured status expired December 31, 2005. (Tr. 20, 97, 98, 103). The application was denied initially (Tr. 53-55) and on reconsideration. (Tr. 58-60). Plaintiff requested an administrative hearing. (Tr. 62). On July 25, 2005, Administrative Law Judge Barry H. Best ("ALJ") held a hearing at which Plaintiff, represented by counsel, and a vocational expert ("VE"), appeared and testified. (Tr. 527-575). The ALJ issued an unfavorable decision on November 10, 2005. (Tr. 38-50). The Appeals Council granted Plaintiff's request for review on January 11, 2006 and ordered a new hearing which was held before ALJ Best on April 7, 2006. (Tr. 34-36, 576-596).[1] A supplemental hearing was then held on June 21, 2006. (Tr. 597-632). The ALJ issued an unfavorable decision on September 28, 2006 finding Plaintiff not disabled. (Tr. 16-27). Plaintiff then filed a request for review which the Appeals Council denied on May 10, 2007. (Tr. 7-9). A timely appeal was then filed with this Court.

## II. THE PARTIES' POSITIONS

Plaintiff argues that the ALJ's mental RFC findings were not supported by substantial evidence. In particular, Plaintiff contends that the ALJ gave insufficient weight to the opinions of her treating therapist, Mr. DiPinto, and the consulting psychologist, Dr. Curran. Plaintiff further

[1] The Appeals Council ordered the ALJ on remand to consider whether Plaintiff's past work as an epoxy painter should be considered past relevant work and to explain his reasoning regarding her obesity. (Tr. 34). The ALJ, on remand, did not find such work to be relevant, and did find obesity to be a severe impairment. (Tr. 20, 26).

argues that the ALJ erred in relying on the outdated opinions of Dr. Tracy and Dr. Fischer. Finally, Plaintiff asserts that the ALJ failed to properly evaluate her credibility.

The Commissioner disputes Plaintiff's claims and argues that there is substantial evidence in the record to support the ALJ's findings that Plaintiff is not disabled within the meaning of the Act.

**III. THE STANDARD OF REVIEW**

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. Ortiz v. Sec'y of Health and Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam); Rodriguez v. Sec'y of Health and Human Servs., 647 F.2d 218, 222 (1st Cir. 1981).

Where the Commissioner's decision is supported by substantial evidence, the court must affirm, even if the court would have reached a contrary result as finder of fact. Rodriguez Pagan v. Sec'y of Health and Human Servs., 819 F.2d 1, 3 (1st Cir. 1987); Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991). The court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. Frustaglia v. Sec'y of Health and Human Servs., 829 F.2d 192, 195 (1st Cir. 1987); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied).

The court must reverse the ALJ's decision on plenary review, however, if the ALJ applies incorrect law, or if the ALJ fails to provide the court with sufficient reasoning to determine that he or she properly applied the law. Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam);

accord Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991). Remand is unnecessary where all of the essential evidence was before the Appeals Council when it denied review, and the evidence establishes without any doubt that the claimant was disabled. Seavey v. Barnhart, 276 F.3d 1, 11 (1st Cir. 2001) citing, Mowery v. Heckler, 771 F.2d 966, 973 (6th Cir. 1985).

The court may remand a case to the Commissioner for a rehearing under sentence four of 42 U.S.C. § 405(g); under sentence six of 42 U.S.C. § 405(g); or under both sentences. Seavey, 276 F.3d at 8. To remand under sentence four, the court must either find that the Commissioner's decision is not supported by substantial evidence, or that the Commissioner incorrectly applied the law relevant to the disability claim. Id.; accord Brenem v. Harris, 621 F.2d 688, 690 (5th Cir. 1980) (remand appropriate where record was insufficient to affirm, but also was insufficient for district court to find claimant disabled).

Where the court cannot discern the basis for the Commissioner's decision, a sentence-four remand may be appropriate to allow her to explain the basis for her decision. Freeman v. Barnhart, 274 F.3d 606, 609-610 (1st Cir. 2001). On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. Diorio v. Heckler, 721 F.2d 726, 729 (11th Cir. 1983) (necessary for ALJ on remand to consider psychiatric report tendered to Appeals Council). After a sentence four remand, the court enters a final and appealable judgment immediately, and thus loses jurisdiction. Freeman, 274 F.3d at 610.

In contrast, sentence six of 42 U.S.C. § 405(g) provides:

> The court...may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding;

42 U.S.C. § 405(g). To remand under sentence six, the claimant must establish: (1) that there is new, non-cumulative evidence; (2) that the evidence is material, relevant and probative so that there is a reasonable possibility that it would change the administrative result; and (3) there is good cause for failure to submit the evidence at the administrative level. See Jackson v. Chater, 99 F.3d 1086, 1090-1092 (11th Cir. 1996).

A sentence six remand may be warranted, even in the absence of an error by the Commissioner, if new, material evidence becomes available to the claimant. Id. With a sentence six remand, the parties must return to the court after remand to file modified findings of fact. Id. The court retains jurisdiction pending remand, and does not enter a final judgment until after the completion of remand proceedings. Id.

## IV. THE LAW

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505. The impairment must be severe, making the claimant unable to do her previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

### A. Treating Physicians

Substantial weight should be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise. See Rohrberg v. Apfel, 26 F. Supp. 2d 303, 311 (D. Mass. 1998); 20 C.F.R. § 404.1527(d). If a treating physician's opinion on the nature and severity of a claimant's impairments, is well-supported by medically acceptable clinical

and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527(d)(2). The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory. See Keating v. Sec'y of Health and Human Servs., 848 F.2d 271, 275-276 (1st Cir. 1988).

Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. See Wheeler v. Heckler, 784 F.2d 1073, 1075 (11th Cir. 1986). When a treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless weigh the medical opinion based on the (1) length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the medical evidence supporting the opinion; (4) consistency with the record as a whole; (5) specialization in the medical conditions at issue; and (6) other factors which tend to support or contradict the opinion. 20 C.F.R § 404.1527(d). However, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion. See 20 C.F.R. § 404.1527(d)(2).

The ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled. However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability. 20 C.F.R. § 404.1527(e). The ALJ is not required to give any special significance to the status of a physician as treating or non-treating in weighing an opinion on whether the claimant meets a listed impairment, a claimant's residual functional capacity (see 20 C.F.R. §§ 404.1545 and 404.1546), or the application of vocational factors because that ultimate determination is the province of the

Commissioner. 20 C.F.R. § 404.1527(e). See also Dudley v. Sec'y of Health and Human Servs., 816 F.2d 792, 794 (1st Cir. 1987).

**B. Developing the Record**

The ALJ has a duty to fully and fairly develop the record. Heggarty v. Sullivan, 947 F.2d 990, 997 (1st Cir. 1991). The Commissioner also has a duty to notify a claimant of the statutory right to retained counsel at the social security hearing, and to solicit a knowing and voluntary waiver of that right if counsel is not retained. See 42 U.S.C. § 406; Evangelista v. Sec'y of Health and Human Servs., 826 F.2d 136, 142 (1st Cir. 1987). The obligation to fully and fairly develop the record exists if a claimant has waived the right to retained counsel, and even if the claimant is represented by counsel. Id. However, where an unrepresented claimant has not waived the right to retained counsel, the ALJ's obligation to develop a full and fair record rises to a special duty. See Heggarty, 947 F.2d at 997, citing Currier v. Sec'y of Health Educ. and Welfare, 612 F.2d 594, 598 (1st Cir. 1980).

**C. Medical Tests and Examinations**

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled. 20 C.F.R. § 416.917; see also Conley v. Bowen, 781 F.2d 143, 146 (8th Cir. 1986). In fulfilling his duty to conduct a full and fair inquiry, the ALJ is not required to order a consultative examination unless the record establishes that such an examination is necessary to enable the ALJ to render an informed decision. Carrillo Marin v. Sec'y of Health and Human Servs., 758 F.2d 14, 17 (1st Cir. 1985).

**D. The Five-step Evaluation**

The ALJ must follow five steps in evaluating a claim of disability. See 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, she is not disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering her residual functional capacity, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled. 20 C.F.R. § 404.1520(f). Significantly, the claimant bears the burden of proof at steps one through four, but the Commissioner bears the burden at step five. Wells v. Barnhart, 267 F. Supp. 2d 138, 144 (D. Mass. 2003) (five-step process applies to both SSDI and SSI claims).

In determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments, and must consider any medically severe combination of impairments throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B). Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled. Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993).

The claimant bears the ultimate burden of proving the existence of a disability as defined by the Social Security Act. Seavey, 276 F.3d at 5. The claimant must prove disability on or before the

last day of her insured status for the purposes of disability benefits. Deblois v. Sec'y of Health and Human Servs., 686 F.2d 76 (1st Cir. 1982), 42 U.S.C. §§ 416(i)(3), 423(a), (c). If a claimant becomes disabled after she has lost insured status, her claim for disability benefits must be denied despite her disability. Id.

**E. Other Work**

Once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy. Seavey, 276 F.3d at 5. In determining whether the Commissioner has met this burden, the ALJ must develop a full record regarding the vocational opportunities available to a claimant. Allen v. Sullivan, 880 F.2d 1200, 1201 (11th Cir. 1989). This burden may sometimes be met through exclusive reliance on the Medical-Vocational Guidelines (the "grids"). Seavey, 276 F.3d at 5. Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant non-exertional factors. Id.; see also Heckler v. Campbell, 461 U.S. 458, 103 S. Ct. 1952, 76 L.Ed.2d 66 (1983) (exclusive reliance on the grids is appropriate in cases involving only exertional impairments, impairments which place limits on an individual's ability to meet job strength requirements).

Exclusive reliance is not appropriate when a claimant is unable to perform a full range of work at a given residual functional level or when a claimant has a non-exertional impairment that significantly limits basic work skills. Nguyen, 172 F.3d at 36. In almost all of such cases, the Commissioner's burden can be met only through the use of a vocational expert. Heggarty, 947 F.2d at 996. It is only when the claimant can clearly do unlimited types of work at a given residual functional level that it is unnecessary to call a vocational expert to establish whether the claimant

can perform work which exists in the national economy. See Ferguson v. Schweiker, 641 F.2d 243, 248 (5th Cir. 1981). In any event, the ALJ must make a specific finding as to whether the non-exertional limitations are severe enough to preclude a wide range of employment at the given work capacity level indicated by the exertional limitations.

### 1. Pain

"Pain can constitute a significant non-exertional impairment." Nguyen, 172 F.3d at 36. Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment which could reasonably be expected to produce the pain or symptoms alleged. 42 U.S.C. § 423(d)(5)(A). The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. 20 C.F.R. § 404.1528. In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the First Circuit's six-part pain analysis and consider the following factors:

(1) The nature, location, onset, duration, frequency, radiation, and intensity of any pain;

(2) Precipitating and aggravating factors (e.g., movement, activity, environmental conditions);

(3) Type, dosage, effectiveness, and adverse side-effects of any pain medication;

(4) Treatment, other than medication, for relief of pain;

(5) Functional restrictions; and

(6) The claimant's daily activities.

Avery v. Sec'y of Health and Human Servs., 797 F.2d 19, 29 (1st Cir. 1986). An individual's statement as to pain is not, by itself, conclusive of disability. 42 U.S.C. § 423(d)(5)(A).

**2. Credibility**

Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. Rohrberg, 26 F. Supp. 2d at 309. A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. See Frustaglia, 829 F.2d at 195. The failure to articulate the reasons for discrediting subjective pain testimony requires that the testimony be accepted as true. See DaRosa v. Sec'y of Health and Human Servs., 803 F.2d 24 (1st Cir. 1986).

A lack of a sufficiently explicit credibility finding becomes a ground for remand when credibility is critical to the outcome of the case. See Smallwood v. Schweiker, 681 F.2d 1349, 1352 (11th Cir. 1982). If proof of disability is based on subjective evidence and a credibility determination is, therefore, critical to the decision, "the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding." Foote v. Chater, 67 F.3d 1553, 1562 (11th Cir. 1995) (quoting Tieniber v. Heckler, 720 F.2d 1251, 1255 (11th Cir. 1983)).

**V. APPLICATION AND ANALYSIS**

Plaintiff was forty-three years old on the date of the ALJ's decision. (Tr. 26). Plaintiff received her GED in 1984 and had previously worked for a few months as a painter in the jewelry manufacturing business and for nearly two decades as a textile winder. (Tr. 108, 113, 130). Plaintiff lost both of these jobs due to plant closings, and there is no indication of any attempted return to work thereafter.

On April 8, 2002, Plaintiff was treated by Dr. Carol Dubois with complaints of shortness of breath, shaking and nausea. Dr. Dubois diagnosed her with an upper respiratory tract infection. (Tr. 212). By April 23, 2002, Plaintiff reported improvement in her symptoms. (Tr. 213). On May 21, 2002, Dr. Dubois saw Plaintiff who reported having anxiety attacks. (Tr. 215). She had not been compliant with her medications. Id. Dr. Dubois' impression was anxiety disorder, hypertension and obesity. Id. Plaintiff was seen by Dr. Dubois on September 12, 2002, with complaints of neck and shoulder pain. (Tr. 216). Upon examination, Dr. Dubois noted trigger points at her left shoulder. Id. The impression was degenerative joint disease and probable radiculopathy. Id. Plaintiff was prescribed Vioxx. Id. Plaintiff received physical therapy for her shoulder and neck symptoms for the remainder of 2002. (Tr. 217-218).

Most of the visits to Dr. Dubois during 2003 are not related to Plaintiff's claims of disability. See Ex. 7F. She did, however, present complaints of numbness in her hands and pain in her right arm. Dr. Dubois referred Plaintiff to Dr. Dennis Aumentado, a Neurologist, who saw Plaintiff on January 29, 2003 and noted positive Tinel's sign at the left wrist and elbow. (Tr. 191). Dr. Aumentado recounted that Plaintiff had a history of cervical radiculopathy, and he suspected that she also had entrapment neuropathy in her arms as well as some component of tennis elbow. (Tr. 192). After diagnostic testing, Dr. Aumentado concluded that Plaintiff had left carpal tunnel syndrome and left ulnar neuropathy at the elbow. (Tr. 193). He found no evidence of cervical radiculopathy. Id.

Plaintiff followed up with Dr. Aumentado on April 10, 2003 with complaints of varicose veins, palpitations, nausea, numbness and tingling in her left hand and neck pain. (Tr. 197). On examination, Plaintiff displayed full range of motion of her neck. Id. There was no palpable

tenderness or stiffness of her shoulder or muscle weakness. Id. Dr. Aumentado prescribed Plaintiff a Lidoderm patch to address her shoulder pain complaints. (Tr. 198).

On April 22, 2003, Dr. Roland Landry evaluated Plaintiff for her palpitations. (Tr. 230). Her medical history was negative for dizziness, lightheadedness or prior myocardial infarction. Id. Dr. Landry's physical and neurological examination of Plaintiff was normal. Id. His diagnoses were palpitations of unclear etiology, anxiety issues and the need for thyroid pathology. (Tr. 231). He also suggested that Plaintiff undergo a cardiac evaluation. Id. The evaluation, or stress test, was normal, and there was no evidence of stress-induced ischemia. (Tr. 235-236).

On September 11, 2003, Dr. Michael Luke saw Plaintiff for varicose veins and discussed treatment options. (Tr. 239). Dr. Luke raised the possibility of surgical intervention to treat her varicose veins. Id. He also advised her to lose weight. Id. After a follow-up visit, on October 23, 2003, Dr. Luke and Plaintiff agreed to proceed with surgery. (Tr. 240-241).

Dr. Richard Goulding, a state agency physician, reviewed Plaintiff's medical files and discussed an assessment of her physical capacity. Ex. 6F. Dr. Goulding found that Plaintiff could lift up to twenty pounds occasionally and ten pounds frequently. (Tr. 202). She could stand, walk or sit for six hours out of an eight-hour workday. Id. She was limited to occasional climbing and crawling. (Tr. 203). Dr. Goulding further restricted Plaintiff's use of her left arm to occasional grasping, twisting or overhead reaching. (Tr. 204).

At the request of the Commissioner, Plaintiff underwent a consultative psychological examination with James Curran, Ph.D., on December 23, 2003. (Tr. 245). Dr. Curran reported that Plaintiff was "fairly talkative" and that she was depressed and anxious. (Tr. 247). She also described experiencing panic attacks. Id. Dr. Curran's diagnosis was major depressive disorder

(recurrent and moderate), panic disorder (moderate) and obsessive-compulsive traits. Id. Dr. Curran could not comment on Plaintiff's ability to work, but felt that her depressive disorder and panic attacks were "quite limiting." (Tr. 248).

On January 13, 2004, Dr. Marsha Tracy completed an assessment of Plaintiff's mental functional abilities based on the existing record. (Tr. 249). Dr. Tracy found that Plaintiff had mild limitations on her activities of daily living and social functioning and moderate difficulties maintaining concentration, pace and persistence. (Tr. 259). Dr. Tracy concluded that Plaintiff could understand and remember three-step instructions; concentrate on, and persist in, simple tasks in unpressured work settings for two-hour increments in an eight-hour day; relate adequately to coworkers and supervision; and adapt to changes in fairly predictable work routines. (Tr. 266).

On March 25, 2004, Dr. Aumentado saw Plaintiff for numbness in her hands. (Tr. 297). Dr. Aumentado found some decreased sensation to pin prick at Plaintiff's hands. Id. He felt that there was little that he could offer her in treatment. Id. Plaintiff was hesitant to undergo steroid injections. Id. On March 29, 2004, Plaintiff saw Dr. Landry for continued complaints of palpitation. (Tr. 298). Her symptoms were not related to any particular activity or exertion. Id. The test results that Dr. Landry obtained were normal. Id. He added a beta blocker to Plaintiff's medication. Id.

On March 29, 2004, Dr. Saro Palmeri issued an assessment of Plaintiff's functional abilities. Ex. 10F. Dr. Palmeri's findings mirrored those of Dr. Goulding – lift twenty pounds occasionally and ten pounds frequently; only occasional overhead reaching, grasping, or twisting with the left arm and hand. (Tr. 270-272). On April 6, 2004, S. Fischer, Psy.D., completed an assessment of Plaintiff's mental functional limitations. Ex. 11F. Dr. Fischer opined that Plaintiff could carry out

simple and some complex instructions for two-hour intervals in an eight-hour day with variable pace/persistence. (Tr. 295).

Counselor Dennis DiPinto, CAGS, LMHC, began seeing Plaintiff on May 17, 2004. Ex. 21F. Plaintiff complained of anxiety and depression. (Tr. 343). Plaintiff initially presented a moderately flat mood and affect. (Tr. 344). On July 15, 2004, Plaintiff presented complaints of anxiety attacks and major depression. (Tr. 346).

On August 25, 2004, Plaintiff was seen by Dr. Tilak Verma for sleep/snoring issues. (Tr. 302). Dr. Verma's impression was obstructive sleep apnea. (Tr. 303). She observed that weight loss was critically important for Plaintiff. Id. When Plaintiff returned for a follow-up appointment, on October 14, 2004, she was given a continuous positive airway pressure (CPAP) machine. (Tr. 305).

Plaintiff also saw Mr. DiPinto on October 14, 2004. (Tr. 350). At that visit, her mental status examination was stable. Id. On December 27, 2004, Plaintiff reported to Dr. Landry that she developed chest pain. (Tr. 315). She related this "time wise" to use of the CPAP machine. Id. Dr. Landry concluded that Plaintiff's symptoms were related to use of CPAP. Id. Plaintiff's sessions with Mr. DiPinto continued through August 9, 2005. These notes are largely unremarkable as Plaintiff was consistently found to have a stable mental status. (Tr. 353-359). On July 22, 2005, Mr. DiPinto completed a clinical update and recommendation. Ex. 20F. He stated that Plaintiff presented a clear vegetative mood and effect. (Tr. 339). He felt that there was "no evidence to substantiate the probability that she would be capable of working in the present or future." Id. He estimated that Plaintiff would have moderately severe restrictions in: relating to other people, her daily activities, her personal habits, understanding work instructions, and responding appropriately

to coworkers or supervisors. (Tr. 341). Mr. DiPinto found Plaintiff to be similarly limited (moderately severe) in performing simple, repetitive or varied tasks. (Tr. 342). Mr. DiPinto commented that Plaintiff's complaints of pain were associated with possible fibromyalgia. Id.

On June 20, 2005, Dr. Ashraf Farid saw Plaintiff for complaints of neck and shoulder pain. (Tr. 337). Plaintiff underwent an MRI of her cervical spine on June 20, 2005. The results showed degenerative changes. (Tr. 331). There was endplate change at C5-6 and mild to moderate central stenosis at C6-7 as well as moderate central stenosis at C5-6 and mild stenosis at C4-5. (Tr. 330-331).

On February 9, 2006, Plaintiff had an initial visit with John Murphy, Psy.D. (Tr. 458). She had symptoms of a sad mood. Id. Dr. Murphy's impression was obsessive compulsive disorder and major depression. Id. Plaintiff also saw Dr. Verma on February 21, 2006 for sleep follow-up. (Tr. 493). She was using the CPAP machine at least six hours per night. Id. Plaintiff also reported problems sleeping relating to anxiety, depression and chronic fatigue. Id. Dr. Verma noted no new findings on Plaintiff's examination. Id. She recommended continued use of the CPAP and weight loss. Id.

Dr. Penelope Yanni of Plaza Psychology and Psychiatry, examined Plaintiff on February 23, 2006. (Tr. 464). Plaintiff complained of long-standing depression and anxiety. Id. She also described panic attacks, poor concentration, feelings of worthlessness and guilt. Id. Dr. Yanni's working diagnoses were major depressive disorder (recurrent, severe), panic disorder with agoraphobia, obsessive compulsive disorder and generalized anxiety disorder. Id. She recommended that Plaintiff continue with her medication and treatment with Dr. Murphy. Id.

Dr. Dubois referred Plaintiff to Dr. Alla Korennaya, a Neurologist, for complaints of headaches. (Tr. 480). On February 28, 2006, Plaintiff presented an eighteen-year history of headaches and that she had fifteen episodes per month. (Tr. 481). The physical examination did not reveal any major abnormalities. (Tr. 482). Dr. Korennaya felt that Plaintiff suffered from chronic daily headaches. (Tr. 493). He also believed that there was an influence from underlying depressive disorder, muscle tension headaches, caffeine withdrawal headaches and analgesic rebound headaches. Id. He recommended Cymbalta for headache prevention, depressive symptoms and pain management. Id. Dr. Korennaya also advised that Plaintiff discontinue caffeinated beverage intake, which Plaintiff declined. Id.

On March 16, 2006, Plaintiff maintained her complaints of depression to Dr. Murphy. (Tr. 459). She also presented feelings of guilt. Id. Dr. Murphy found that Plaintiff's thought process and concentration were within normal limits. Id. Dr. Yanni saw Plaintiff on March 23, 2006 and reported feelings of depression, guilt and worthlessness. (Tr. 501). Dr. Yanni observed that Plaintiff had a depressed mood and anxious affect. Id. Her thought content was unremarkable, and her thought pattern was linear and goal directed. Id. Dr. Yanni further found that Plaintiff's memory, judgment and insight were intact. Id. The impression was major depressive disorder, panic disorder, obsessive compulsive disorder and generalized anxiety disorder. (Tr. 501-502).

Plaintiff met with Dr. Murphy on April 10, 2006 for symptoms of sad mood and excessive cleaning. (Tr. 514). Plaintiff also mentioned feelings of guilt. Id. Her thought process and concentration were within normal limits, but her mood was depressed and anxious. Id. Dr. Yanni met with Plaintiff on May 4, 2006. She maintained her complaints of depression and feelings of worthlessness. Dr. Yanni's findings on examination did not vary from the March 23, 2006

appointment. (Tr. 503). Similarly, when Plaintiff saw Dr. Murphy on May 31, 2006, she displayed the same symptoms of depression and anxiety. (Tr. 515). Plaintiff reported the same symptoms to Dr. Yanni on June 15, 2006. (Tr. 505-506). At a visit to Dr. Murphy, on June 27, 2006, Plaintiff reported continued obsessive compulsive disorder symptoms. (Tr. 516). Dr. Murphy maintained the observation that Plaintiff's thought process and concentration were within normal limits. Id.

At Dr. Dubois' referral, Plaintiff saw Dr. Carl DiRobbio for evaluation of her right shoulder on March 27, 2006. (Tr. 499). Plaintiff claimed pain of two months' duration. Id. Upon examination, Dr. DiRobbio noted that Plaintiff had full range of motion of her shoulder, but when she lifted her arms, she reported paresthesias in her hands. Id. X-rays of her right shoulder showed significant joint arthritis. Id. Dr. DiRobbio's assessment was degenerative arthritis of the right AC joint and healing callus around the fracture of the right clavicle. Id.

**A. The ALJ's Mental RFC Finding is Supported by Substantial Evidence**

In his first decision (Tr. 41-45), the ALJ decided this case adverse to Plaintiff at Step 4. The ALJ found that Plaintiff's cervical spine disorder, left carpal tunnel syndrome/neuropathy, headaches and depression/anxiety were "severe" impairments and limited Plaintiff to light work with certain other exertional and non-exertional limits. (Tr. 45, Findings 3 and 6). Based on this RFC, the ALJ determined that Plaintiff was not disabled because she could perform her past relevant work as an epoxy painter. (Tr. 46, Finding 7).

The Appeals Council vacated the ALJ's first decision and remanded for further proceedings. (Tr. 35-36). It criticized the ALJ's finding that Plaintiff's epoxy painting job was "past relevant work" and his failure to explicitly evaluate the impact of Plaintiff's obesity on her RFC. (Tr. 35). In his second decision (Tr. 18-27), the ALJ decided this case adverse to Plaintiff at Step 5. The ALJ

did not find Plaintiff's short period of employment as an epoxy painter to be "past relevant work" and added obesity to the list of "severe" impairments. (Tr. 20, 26). In other words, the ALJ "fixed" the issues identified by the Appeals Council. The ALJ's RFC assessment in the second decision was similar but somewhat more restrictive than his original RFC. Based on this RFC and the VE's opinion, the ALJ rendered a finding of no disability because Plaintiff was "capable of making a successful adjustment to other [light and sedentary] work that existed in significant numbers in the national economy." (Tr. 27).

Plaintiff does not challenge the physical aspects of the ALJ's RFC assessment. Rather, she challenges the ALJ's decision to assess a moderate, rather than moderately severe, restriction in maintaining concentration, persistence and pace. (Tr. 573-574). Plaintiff also challenges the ALJ's failure to find an impairment (either severe or moderately severe) in the ability to respond to customary work pressures. (Tr. 526, 574, 631).

Because this is a DIB claim, the ALJ was required to determine the existence of disability at any time from the alleged onset date, February 15, 2002, through the date last insured, December 31, 2005. Plaintiff first challenges the ALJ's evaluation of evidence from her counselor, Mr. DiPinto. Plaintiff first met with Mr. DiPinto on May 17, 2004 with complaints of anxiety and panic. (Tr. 343). Mr. DiPinto saw Plaintiff fairly regularly in 2004 and the first half of 2005 (Ex. 21F), and completed a mental RFC questionnaire at the request of Plaintiff's counsel shortly before the first ALJ hearing. (Tr. 341-342).

The ALJ gave "limited probative value" to Mr. DiPinto's assessment and was particularly troubled by Mr. DiPinto's non-physician diagnosis of fibromyalgia. (Tr. 25-26, 342). The ALJ also preferred the RFC assessments of the consulting physician reviewers due to their consistency with

recorded treatment records. (Tr. 25). From this, it is reasonable to infer that the ALJ determined that Mr. DiPinto's RFC assessment was inconsistent with such records. In fact, in his first decision, the ALJ found Mr. DiPinto's RFC assessment to be "inconsistent with the rest of the record, including both the degree of treatment required and his own clinical notes, which indicates that [Plaintiff] was progressing well in counseling." (Tr. 43).

SSR 06-03p explains that evidence from an "acceptable medical source," such as a psychiatrist or psychologist, is necessary to establish the existence of a medically determinable impairment. See 20 C.F.R. § 404.1513(a). Further, only an "acceptable medical source" can render a medical opinion (20 C.F.R. § 404.1527(a)(2)) or be considered a treating source (20 C.F.R. § 404.1502) whose opinion may be entitled to controlling weight (20 C.F.R. § 404.1527(d)). A counselor such as Mr. DiPinto is not an "acceptable medical source" under 20 C.F.R. § 404.1513. However, under SSR 06-03p, evidence from medical sources who are not "acceptable medical sources" must be considered by the ALJ on the issues of impairment and ability to function. An opinion from such a source is also entitled to consideration applying the following factors: length of relationship, frequency of visits, consistency with other evidence, degree of support and the source's specialization. SSR 06-03p.

Here, the ALJ applied SSR 06-03p and properly considered Mr. DiPinto's opinion. (Tr. 25-26). First, Mr. DiPinto opined on July 22, 2005 that "[t]here is no evidence to substantiate the probability that [Plaintiff] would be capable of working in the present or future." (Tr. 339). This is not a medical opinion but rather an opinion on the ultimate issue of disability. See 20 C.F.R. § 404.1527(e)(1). This is a determination reserved to the Commissioner. Id. Mr. DiPinto's opinion on employability is also not substantiated by his progress notes. Ex. 21F. In fact, Mr. DiPinto

"discussed the possibility of work" with Plaintiff to which she responded that it was "not in the future." (Tr. 352).

The ALJ also criticizes Mr. DiPinto for making a medical diagnosis (fibromyalgia) and combining the limitations attributed to Plaintiff's physical and mental impairments. (Tr. 25-26). Although there is no supporting medical diagnosis in the record, Mr. DiPinto, a non-physician, assessed the need for "neuro psychological testing" in part to "rule out fibromyalgia." (Tr. 356). Mr. DiPinto identified fibromyalgia as a "contributing factor[ ] to [Plaintiff's] overall mood, affect , and overall psychological makeup." (Tr. 360). Plaintiff argues that there is no indication that the functional limitations assessed by Mr. DiPinto "were attributable, in his opinion, to anything other than [Plaintiff's] psychiatric impairments." (Document No. 8 at 18). However, Plaintiff's argument is directly contradicted by Mr. DiPinto's progress notes which identify fibromyalgia as a "contributing factor." (Tr. 360). Mr. DiPinto's opinion as to fibromyalgia is beyond his area of expertise and unsupported by the record. Thus, the ALJ properly considered the fibromyalgia "issue" in evaluating the overall weight to give to Mr. DiPinto's assessment.

Finally, Mr. DiPinto's assessment of severe and moderately severe psychiatric impairments (Tr. 341-342) is simply not supported by his progress notes or the record in general. Mr. DiPinto concluded that Plaintiff was severely limited in her ability to respond to customary work pressures and moderately severely limited in performing simple tasks. Id. Yet, despite these disabling limitations, Mr. DiPinto regularly assessed Plaintiff as stable, alert and fully oriented (Ex. 20F) and, on December 28, 2004, "discussed the possibility of work" with Plaintiff. (Tr. 352). Mr. DiPinto discussed Plaintiff's husband's alcoholism and noted that Plaintiff was "very logical and able to cognitively understand the elements of substance abuse and how this effects and impacts her and her

family." (Tr. 347). He also noted that Plaintiff enjoys reading and was interested in research material on her condition. Id. Plaintiff has shown no error in the ALJ's evaluation of Mr. DiPinto's assessments.

Plaintiff also argues that the ALJ erred in failing to give more weight to the opinion of Dr. Curran. Dr. Curran is a psychologist who evaluated Plaintiff, on December 23, 2003, at the request of the Commissioner. Ex. 8F. Based on this evaluation, Dr. Curran diagnosed major depressive disorder, recurrent, moderate and panic disorder, moderate and noted a GAF of 45. Id. As to Plaintiff's ability to work, Dr. Curran did not render a definitive opinion. Id. He indicated that he could not comment on Plaintiff's medical problems (which are not at issue in this appeal) since he was not a physician. (Tr. 248). He described Plaintiff's psychiatric issues as "quite limiting" but offered no specific functional limitations. Id. Dr. Curran's conclusion was simply not definitive enough to constitute an opinion on functionality as contemplated by 20 C.F.R. § 404.1527(a)(2).

The ALJ exercised his discretion to consider the totality of Dr. Curran's report and the inconsistency between Dr. Curran's diagnoses, GAF rating, historical report as to Plaintiff and his evaluation of her condition on the day of the evaluation. It is also noteworthy that the non-examining reviewers (Dr. Tracy and Dr. Fischer) had the same impression of Dr. Curran's report as the ALJ. See Exs. 9F and 11F. Both Dr. Tracy and Dr. Fischer considered Dr. Curran's report (Tr. 266, 290) and assessed primarily no or moderate limitations on Plaintiff's mental RFC. Based on this medical evidence, the ALJ included in his RFC assessment a moderate restriction in the ability to maintain concentration, persistence and/or pace. (Tr. 21). The ALJ described this as the ability to perform "simple work tasks" for a normal workday assuming short work breaks on average

every two hours. Id. Plaintiff has shown no error in the ALJ's evaluation of Dr. Curran's report or his mental RFC assessment since they are supported by substantial evidence.

Plaintiff lastly argues that the ALJ's mental RFC assessment is not supported by substantial evidence because it is based on "outdated" state agency opinions. In particular, the January 13, 2004 opinion of Dr. Tracy (Ex. 9F) and the April 6, 2004 opinion of Dr. Fischer. (Ex. 11F). The ALJ gave the functional capacity assessments of the "non-examining physician reviewers," including Dr. Tracy (Ex. 9F), "significant weight as they are fully supported by the objective findings and contemporaneously recorded treatment notes...." (Tr. 25).[2] For her claim that the state agency opinions are "outdated," Plaintiff relies on Alcantara v. Astrue, No. 07-1056, 2007 WL 4328148 (1st Cir. 2007) (per curiam). However, Alcantara is factually distinguishable from this case. First, there are material differences between the medical record in the two cases, and there was evidence in Alcantara that the claimant's mental condition significantly deteriorated after the consultant's report in question. There is no such evidence in this case. Second, it involved a claim for Supplemental Security Income ("SSI") benefits and not for Disability Insurance Benefits ("DIB") as is presented in this case. In an SSI case, the ALJ is tasked to determine the claimant's entitlement to benefits from the month following the date of filing the application forward. 20 C.F.R. § 416.335. Thus, the record is more of a moving target, and medical opinions rendered during the early stages of the claim review process can become "stale" if there is a substantial delay in obtaining a final ALJ decision. To the contrary, in a DIB case such as this, the ALJ must make his or her disability determination as of the date last insured ("DLI"). 20 C.F.R. § 404.131.

[2] The ALJ also relied on Dr. Tracy's opinion in his first decision and favored it over the opinion of Mr. DiPinto given the inconsistency between his RFC assessment and the rest of the record. (Tr. 43).

Plaintiff's DLI was December 31, 2005. Plaintiff argues that the opinions of Dr. Tracy and Dr. Fischer are outdated, in part, because they had not seen the treatment notes of Dr. Yanni or Dr. Murphy. Document No. 8 at 19. While this argument is factually correct, Plaintiff fails to point out that she did not begin treating with Dr. Yanni or Dr. Murphy until 2006 (Tr. 458, 464) after her DLI. In other words, these later treatment records did not cover the period of alleged disability for DIB purposes and are not as informative as they would be in an SSI case. Plaintiff has shown no error in the ALJ's reliance on the opinions of Dr. Tracy and Dr. Fischer. Castro v. Barnhart, 198 F. Supp. 2d 47, 54 (D. Mass. 2002) ("[An ALJ] may reject a treating physician's opinion as controlling if it is inconsistent with other substantial evidence in the record, even if that evidence consists of reports from non-treating doctors.").

**C. The ALJ Properly Evaluated Plaintiff's Credibility**

Plaintiff contends that the ALJ "based his credibility findings entirely on what he considered to be [Plaintiff's] exaggerated demeanor." (Document No. 8 at 21). She argues that the ALJ did not follow the Avery criteria and "the reasons he did give were inadequate and erroneous." Id.

However, the "exaggerated demeanor" analysis was included in the ALJ's first decision. (Tr. 43). That decision was vacated by the Appeals Council, and the case was remanded for a second ALJ hearing. (Tr. 36). After remand, Plaintiff again testified before the ALJ. (Tr. 581-596). In his second decision, the ALJ found that Plaintiff's impairments could reasonably be expected to produce the type of symptoms alleged by Plaintiff, but not to the degree alleged. (Tr. 21-22). He accurately noted that Plaintiff's somatic complaints had limited objective support. (Tr. 22). For example, Plaintiff's allegations of neck and shoulder pain contrasted with the consistent finding that she had full range of motion in the neck and that her muscle strength was full. The ALJ also noted that,

despite Plaintiff's claims of pain from varicose veins, she did not seek any active treatment after October 2003. (Tr. 22). With regard to Plaintiff's palpitations, the ALJ recounted that Dr. Landry could find no medical evidence to explain such symptoms. Id. As the First Circuit has held, while complaints of pain need not be precisely corroborated with medical evidence, they must be consistent with the medical findings. Avery v. Sec'y of Health and Human Servs., 797 F.2d 19, 21 (1st Cir. 1986); Dupuis v. Sec'y of Health and Human Servs., 869 F.2d 622, 623 (1st Cir. 1989).

The ALJ's credibility review did not rest solely on a review of the medical evidence. The ALJ also considered Plaintiff's daily activities, as she was able to shop and attend school functions for her children (with occasional difficulty). (Tr. 25). An ALJ is entitled to consider a claimant's daily activities when assessing credibility. See Gordils v. Sec'y of Health and Human Servs., 921 F.2d 327, 330 (1st Cir. 1990) (affirming a credibility determination where the ALJ took notice of Plaintiff's daily activities); see also 20 C.F.R. § 404.1529(c)(3)(i) (providing that an ALJ may consider an individual's daily activities when weighing subjective pain complaints).

As noted above, Plaintiff's sole challenge to the credibility finding is that the ALJ described Plaintiff's "exaggerated demeanor" at the first ALJ hearing and based his adverse credibility determination on this observation. Plaintiff's argument is misplaced. The language regarding "exaggerated demeanor" is contained in the prior, vacated decision. (Tr. 41-46). Neither that decision, nor the hearing from which it stemmed, are under review in this case. Plaintiff has not shown that the ALJ's current decision, after a new hearing, failed to adhere to the standards set forth in SSR 96-7p and 20 C.F.R. § 404.1529.

While Plaintiff may disagree with the ALJ's ultimate conclusion, it was his function to consider and weigh all of the evidence. It was within the ALJ's province to conclude that the

totality of the medical evidence and record evidence as to Plaintiff's condition and activities was more credible than her testimony at the hearing. See Barrientos v. Sec'y of Health and Human Servs., 820 F.2d 1, 3 (1st Cir. 1987) (evidence of claimant's activities and contrary objective medical evidence was sufficient to support the ALJ's rejection of Plaintiff's complaint of disabling pain). Finally, the ALJ's credibility determination must be considered in the context of his RFC assessment. The ALJ did not conclude that Plaintiff could return to her past work classified by the vocational expert as medium exertion work. (Tr. 627-628). The ALJ determined that Plaintiff was limited to light-duty work with additional exertional and non-exertional limitations. Based on the totality of the record, Plaintiff has shown no error in the ALJ's adverse credibility determination or non-disability finding.

## VI. CONCLUSION

For the reasons stated above, I recommend that the Commissioner's Motion for an Order Affirming the Decision of the Commissioner (Document No. 9) be GRANTED and that the Plaintiff's Motion to Reverse the Decision of the Commissioner (Document No. 8) be DENIED.

Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of the Court within ten (10) days of its receipt. See Fed. R. Civ. P. 72(b); LR Cv 72. Failure to file specific objections in a timely manner constitutes waiver of the right to review by the District Court and the right to appeal the District Court's decision. See United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).

/s/ Lincoln D. Almond
LINCOLN D. ALMOND
United States Magistrate Judge

June 2, 2008